IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RITA L. WILCOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | No. 11 C 814 |
| THE ALLSTATE CORPORATION, A/K/A | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Rita L. Wilcox ("Wilcox") filed suit against Defendant Allstate Insurance Company ("Allstate") pursuant to Title VII of the Civil Rights Act of 1964, as amended by 42 U.S.C. § 2000e *et seq.* Plaintiff is a former employee of Allstate and Pilot Catastrophe Services ("Pilot"), a contractor for Allstate, who was reassigned in 2008 from her position as a catastrophic litigation adjuster and terminated in July 2009. Plaintiff alleges Allstate retaliated against her based on her affiliation with her husband, Robert Wilcox, who also worked for Allstate and complained to his superiors of age discrimination in 2004 and 2008. Defendant moves for summary judgment. For the reasons discussed below, Defendant's motion for summary judgment is granted.

## STATEMENT OF MATERIAL UNDISPUTED FACTS[1]

Wilcox was employed by Allstate from 1998 to 2003. (Def. 56.1. St. ¶ 16.) As an Allstate employee, Wilcox reported to an Allstate supervisor, received her paycheck from Allstate, and received benefits directly from Allstate. (*Id.* ¶ 17.)

Allstate maintains a National Catastrophe Team ("CAT Team") to process personal, property, and litigation claims resulting from natural disasters and catastrophes. (*Id.* ¶ 2.) Members of the CAT Team are deployed to offices Allstate establishes near the site of the catastrophe to handle claims arising from catastrophic events. (*Id.* ¶ 3.)

To help process litigation claims resulting from catastrophic events, Allstate engaged in a contractual relationship with Pilot, an independent adjusting firm that assigned experienced and skilled adjusters to assist Allstate in the handling of claims. (*Id.* ¶ 6.) Pilot managers located on-site supervised Pilot employees performing services at Allstate, while Allstate managers supervised Allstate employees. (*Id.* ¶ 8.) The independent adjusting agreement ("Agreement") between Allstate and Pilot provides that "[n]either Pilot nor any of its employees or other agents shall be deemed an 'employee,' 'agent,' 'servant,' or 'joint employee' of Allstate." (*Id.* ¶ 7.) The agreement also states:

> Allstate will have no control or influence over any of Pilot's employees or other agents. In that regard, Pilot shall have the sole discretion to hire and fire, discipline, evaluate, manage, train, maintain records of hours, handle payroll, provide insurance, and determine all other terms and conditions of employment for its employees.

(*Id.*)

---

[1] Throughout this Opinion, the Court refers to the Parties' Local Rule 56.1 Statements of Undisputed Material Facts as follows: citations to Allstate's Statement of Material Facts have been abbreviated to "Def. 56.1 Ex. St. ¶ __."; citations to Wilcox's Response to Allstate's Statement of Material Facts have been abbreviated to "Pl. 56.1 Resp. ¶ __."

In 2005, Allstate established the Eastern Property Specialty Office ("ESPO") in Lake Mary, Florida. (*Id.* ¶ 4.) CAT Team members at the EPSO processed claims arising from hurricanes in Florida and later from Hurricane Katrina. (*Id.* ¶ 4.) Terri Coley ("Coley"), a Market Claims Manager for Allstate, oversaw the CAT Team's day-to-day operations at the ESPO. (*Id.* ¶ 5.)

## I.     Robert Wilcox's Employment With Allstate

Allstate employed Wilcox's late husband, Robert Wilcox ("Mr. Wilcox"), from approximately 1973 until September 24, 2009, when he committed suicide. (*Id.* ¶ 36.) On November 29, 2004, shortly after Coley was selected to lead the ESPO, Mr. Wilcox sent an email to his then-supervisor, Melvin Springer ("the 2004 complaint"). (*Id.* ¶ 41.) The email noted that Coley would lead the ESPO with the job title of Market Claim Manager, a bonus-eligible position, while Mr. Wilcox's job title had been changed from Market Claim Manager to a non-bonus eligible position. (*Id.* ¶ 42.) Mr. Wilcox requested "equal treatment via bonus restoration." (*Id.*) There is no indication that Springer discussed or forwarded the 2004 complaint to Coley or upper management at Allstate. (*Id.* ¶ 47.) In 2005, after being selected to lead the ESPO, Coley became Mr. Wilcox's supervisor. (*Id.* ¶ 37.)

On September 23, 2008, Mr. Wilcox emailed Coley stating that he "perceive[d] current and prior queries regarding [his] work scheduling, timekeeping, and expense accounts as questioning [his] integrity" and that "[t]he frequency and tone of these inquiries . . . created for [him] . . . a hostile and unacceptable work environment" (the "2008 complaint"). (*Id.* ¶ 48.) Mr. Wilcox did not refer to his age as being a cause of the alleged hostility. (*Id.* ¶ 50.) Rita Wilcox is not aware of any individuals who received the 2008 complaint other than Coley. (*Id.* at ¶ 49.)

## II.        Plaintiff's Employment at Pilot

In April 2006, about three years after Rita Wilcox's employment at Allstate ended, Wilcox began working for Pilot. (*Id.* ¶ 18.)  Soon after Pilot hired Wilcox, Pilot assigned her to provide services at the ESPO as a catastrophic litigation adjuster. (*Id.* ¶ 20.) Wilcox did not request or express a preference to be assigned to Allstate. (*Id.* ¶ 21.)  Though Pilot did not discuss with Wilcox how long her assignment at Allstate would last (*Id.* ¶ 21), Wilcox was aware that Pilot could reassign her to a different company at any time. (*Id.* ¶ 23.)  Wilcox did not interview with anyone at Allstate prior to her assignment there, and does not recall reviewing or signing any Allstate employment policies. (*Id.* ¶ 22.)  Wilcox understood the staffing of Pilot employees at Allstate corresponded with demand and that she would be assigned to Allstate for a limited duration, and observed that the number of Pilot employees providing service at Allstate increased when there was a higher number of pending claims. (*Id.* ¶¶ 24–25.)

As a Pilot employee assigned to provide services at Allstate, Wilcox reported to various Pilot managers, including Lloyd Billups, Jim Bergult, David Radigan, and Frankie Johnson. (*Id.* ¶ 26.)  Wilcox received training and feedback on the quality of her performance from these Pilot managers. (*Id.* ¶¶ 27, 29.)  Wilcox also directed questions regarding her claims to her Pilot managers. (*Id.* ¶ 28.)  If Wilcox needed time off from work or needed to come in late or leave early, she would ask her Pilot managers for approval. (*Id.* ¶ 30.)  In addition to her daily rate of pay, Wilcox received from Pilot a per diem payment to cover all expenses she incurred while living away from home. (*Id.* ¶ 32.)

### III.     Plaintiff's 2008 Re-Assignment and 2009 Termination

On or about September 6, 2008, Jim Bergult, a Pilot manager, provided Wilcox with two-weeks notice that her assignment to the CAT Team would be ending. (*Id.* ¶ 52.)  Immediately after being released from the CAT Team, Wilcox was reassigned to Allstate's Department of Insurance Response Team ("DOI Team"), which allowed her to come back and work on the Allstate account at the ESPO. (*Id.* ¶¶ 52–53.)  Coley was not involved in the decision to release Wilcox from her assignment at to the CAT Team in September 2008 and was unaware of any such change in Wilcox's assignment at that time. (*Id.* ¶ 56.)

The ESPO closed in May 2009. (*Id.* ¶ 60.) The staff working at the ESPO, including Wilcox and Mr. Wilcox, were relocated to Allstate's Centralized Property Specialty Office ("CPSO") in Woodridge, Illinois. (*Id.*) Allstate's objective for the relocation was to reduce the number of Pilot employees handling claims and to replace them with permanent Allstate adjusters. (*Id.* ¶ 62.) Pilot employees were given exit dates of 30, 60, or 120 days from the date of the transfer to the CPSO. (*Id.* ¶ 64.)  When the ESPO closed, Coley left the CAT Team and accepted a transfer to Allstate's St. Petersburg, Florida office. (*Id.* ¶ 61.)  Coley did not retain any supervisory responsibilities over the employees who transferred to the CPSO. (*Id.*)

In 2009, Bruce Maly ("Maly"), a Pilot litigation adjuster, decided to leave the CPSO. (*Id.* ¶ 68.)  Wilcox's supervisors made arrangements for Wilcox to take over Maly's litigation files. (*Id.*) However, Penny Howell ("Howell"), Allstate's Administrative Manager for the CAT Team, informed Pilot that based on the pending claim volume, the CPSO needed to release one Pilot employee from his or her assignment. (*Id.* ¶ 69.)   Howell left the decision of which Pilot employee to release to the Pilot managers. (*Id.* ¶ 70.)   Thomas Medina ("Medina"), a Pilot manager, decided that Maly's position would not be filled and that instead the claims Maly was

working on would be absorbed by the remaining Pilot adjusters. (*Id.* ¶ 71.) Instead of being assigned to take over Maly's files, Medina released Wilcox from her assignment at Allstate on July 15, 2009. (*Id.* ¶¶ 72–73.) Neither Coley nor any other Allstate employee was involved in the decision to end Wilcox's assignment at Allstate.[2] (*Id.* at ¶ 74.)

### V. Plaintiff's Discrimination and Retaliation Claims

On January 7, 2010, Wilcox filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), claiming retaliation based on her association with her husband, Robert Wilcox, who engaged in a protected activity by complaining of age discrimination. (*Id.* ¶ 77.) Wilcox asserts that her reassignment in 2008 and termination in 2009 was in retaliation for her husband's complaints of an inhospitable work environment. (*Id.* ¶¶ 54, 78.) Wilcox maintains that although she was a Pilot employee in 2008 and 2009, Allstate is liable for the alleged retaliation because Allstate became a co-employer and was no longer allowing Pilot to make staffing decisions. (*Id.* ¶ 79.) According to Wilcox, it was Allstate's decision to terminate Wilcox from her assignment.(*Id.*)

### STANDARD OF REVIEW

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the

---

[2]It is unclear from the pleadings and briefs whether Wilcox continued to work for Pilot on another assignment after being released from her assignment at Allstate. Wilcox's Complaint only states that she subsequently moved to Houston, Texas. However, Allstate does not dispute that Wilcox suffered an adverse employment action.

motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. Of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted by the opposing party, the Court will accept that statement as true for the purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted."). As the party opposing the motion for summary judgment, Wilcox "gets the benefit of all facts that a reasonable jury might find." *Loudermilk v. Best Pallet Co., LLC,* 636 F.3d 312, 314 (7th Cir. 2011). However, she cannot rely on mere conclusions and allegations to create factual issues. *Bladerston v. Fairbanks Morse Engine Div. Of Coltec Ind.*, 328 F.3d 309, 320 (7th Cir. 2003). Nor can speculation be used "to manufacture a genuine issue of fact." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (citing *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001)).

## DISCUSSION

### I.     Parties' Rule 56.1 Challenges

Both parties assert that the other has failed to comply with Local Rule 56.1 in filing its statements of undisputed facts.  In order to clarify what is properly before the Court and what is not, the Court addresses these arguments before delving into a substantive analysis of Wilcox's claims, beginning with a brief overview of what is required of parties under Local Rule 56.1.

### A.     Local Rule 56.1 Requirements

The Northern District promulgated Local Rules 56.1(a) and 56.1(b) in order to set forth the obligations of parties in summary judgment proceedings. *See Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000).  The goal of Local Rule 56.1 is to "streamline the summary judgment process in order to assist the court by organizing the evidence, identifying the disputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *See Renaldi v. Sears Roebuck & Co.*, No. 97 C 6057, at *2 (N.D. Ill. Mar. 21, 2001) (citing *Markham v. White*, 172 F.3d 486, 490 (7th Cir. 1999)).  The Court requires strict compliance with Local Rule 56.1, *Raymond v. Ameritech Corp.*, 442 F.3d 600, 604 (7th Cir. 2006), which governs three separate types of statements: (1) the movant's statement; (2) the nonmovant's response and statement of additional facts; and (3) the movant's response to the additional facts. N.D. Ill. R. 56.1.

The movant's statements, under Local Rule 56.1(a)(3), must put forth undisputed material facts that, according to the movant, entitles that party to judgment as a matter of law. *Malec*, 191 F.R.D. at 583.  This statement should contain *only* factual allegations; legal conclusions are inappropriate. *Id.*  In addition, "the 56.1(a) statement should be limited to *material* facts, that is, facts pertinent to the outcome of the issued identified in the summary

judgment motion." *Id.* The alleged facts must be listed in short, numbered paragraph, each containing only one or two individual allegations. N.D. Ill. R. 56.1(a). *See also Ammons v. Aramark Uniform Svcs, Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). It is "inappropriate to confuse the issues by alleging multiple facts in a single paragraph in hopes of one's opponent missing one." *Malec*, 191 F.R.D. at 583. Finally, each paragraph must contain a "specific reference" to "exact pieces of the record that support the factual contention in the paragraph." *Id.*

Local Rule 56.1(b)(3) governs the nonmovant's response to the movant's statement of facts as well as the nonmovant's statement of additional facts." *Id* at 583–84. It is crucial that litigants understand Rule 56.1(b)(3) because the consequence of failing to satisfy its requirements is usually summary judgment for the movant. *Id.* at 584. This is because without a response to the movant's 56.1(a) statement, all material facts set forth in statement are deemed admitted." N.D. Ill. R. 56.1(b). The rule requires that the nonmovant's response contain "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. R. 56.1(b)(3)(A). *See also Ammons*, 368 F.3d at 817. General denies are insufficient to rebut a movant's factual allegations. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001). Also, the nonmovant's response should "mirror the movant's statement in form (*i.e.* paragraph one of the response should correspond to paragraph one of the movant's statement)." *Malec*, 191 F.R.D. at 584. "[A] nonmovant's failure to adhere to these requirements is equivalent to admitting the movant's case." *Id.*

Lastly, Local Rule 56.1(b)(3)(B) sets out requirements for the nonmovant's statement of additional facts. Similar to the movant's statement, the statement of additional facts must set forth, in short numbered paragraphs, facts that require the denial of summary judgment,

supported by specific references in the record. N.D. Ill. R. 56(b)(3)(B). The rule "provides the only acceptable means of . . . presenting additional facts." *FTC v. Bay Area Business Council, Inc.*, 423 F.3d 627, 634 (7th Cir. 2005) (quoting *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995). *See also Ammons*, 368 F.3d at 817. After the nonmovant files its statement of additional facts, the movant has the opportunity to respond in a format similar to the nonmovant's response. N.D. Ill. R. 56.1(a).

### B. Wilcox's Challenge to Allstate's Use of Declarations in its Local Rule 56.1 Statement

Wilcox asserts that Allstate's use of "Declarations" to support its Rule 56.1 Statement is improper because declarations to not constitute admissible evidence, and therefore cannot be used to support a motion for summary judgment. Specifically, Wilcox objects to Allstate's use of declarations submitted by Penny Howell (Def. 56.1 St., Ex. H), and Tomas Medina (Def. 56.1 St., Ex. I). Local Rule 56.1 does not impose such a limitation.

Rule 56.1(a)(3) provides: "The statement . . . shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, *and other supporting material* relied upon to support the facts set forth in that paragraph." N.D. Ill. R. 56.1(a)(3) (emphasis added). In addition, Federal Rule of Civil Procedure 56(c) allows a party to support its assertion by "citing to . . . depositions, documents, electronically stored information, affidavits *or declarations*, stipulations, admissions, interrogatory answers, or other materials." F.R.C.P. 56(c)(1) (emphasis added). Declarations submitted pursuant to 28 U.S.C. § 1746 need not be submitted in the presence of someone authorized to administer oaths. *Owens v. Hinsley*, 635 F.3d 950, 954–955 (7th Cir. 2011) (finding declarations submitted under 28 U.S.C. § 1746 "equivalent to an affidavit for purposes of summary judgment"); *El Bey v. Roop*, 530

F.3d 407, 414 (6th Cir. 2008) (holding that on defendants' motion for summary judgment, plaintiff's verified complaint, signed under penalty of perjury pursuant to § 1746, carried the same weight as an affidavit).

In this case, Medina and Howell's declarations were submitted under penalty of perjury pursuant to 28 U.S.C. § 1746. Accordingly, this Court finds Allstate's use of the declarations to support its Local Rule 56.1 Statement appropriate.

### C. Allstate's Challenges to Wilcox's Response to Allstate's Local Rule 56.1 Statement

Allstate asserts that Wilcox has failed to comply with Local Rule 56.1 in filing her response to Allstate's Statement of Material Facts. Specifically, Allstate asserts: (1) Wilcox's failure to explicitly admit or deny paragraphs 7 and 8 in Allstate's Rule 56.1 statement constitutes an admission; (2) Wilcox's proffers of additional facts in her Response to Allstate's 56.1 statement should be disregarded because she failed to present them in her own Statement of Additional Facts as required under Local Rule 56.1(b)(3)(C); (3) several of Wilcox's responses are either unsubstantiated or cite to evidence that does not actually dispute Allstate's factual assertions; and (4) certain paragraphs from Wilcox's own affidavit should be stricken because they either lack foundation or are inconsistent with her deposition.[3]

Paragraph 7 of Allstate's Rule 56.1 statement refers to and quotes from the independent adjusting agreement between Allstate and Pilot. (Def. 56.1 St. ¶ 7.) Paragraph 8 asserts that there were differences in the roles and responsibilities of Pilot and Allstate managers. (*Id.* ¶ 8.) In her response, Wilcox neither admits nor denies the factual assertions contained in these paragraphs. Instead, Wilcox states only that "the agreement speaks for itself." (Pl. 56.1 Resp. ¶

---

[3]Allstate also challenges Wilcox's denial of paragraph 43 in Allstate's Rule 56.1 statement. The Court finds it more appropriate to address this issue in its substantive analysis of Wilcox's claims. *See* Section II.D.1.

2.)  This does not constitute a denial.  *See* N.D. Ill. R. 56.1(b)(3)(C) ("All material facts set forth in statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party.").  *See also Ammons*, 368 F.3d at 818 (non-moving party's assertion that allegations in movant's 56.1 statement were "irrelevant" does not excuse the non-moving party from "at least indicating that it agrees with or denies the allegation"); *Bladerston*, 328 F.3d at 320 (parties cannot rely on mere conclusions and allegations to create factual issues); *Albiero*, 246 F.3d at 933 (adequate rebuttal requires a citation to specific support in the record; unsubstantiated denials are inadequate).  Accordingly, paragraphs 7 and 8 are properly before the Court on summary judgment.

Wilcox proffers additional facts in paragraphs 5–9, 11, 15, and 18 of her response to Allstate's 56.1 statement.  This is not the proper method for presenting additional facts under Local Rule 56.1.  Once again, the statement of additional facts under Local Rule 56.1(b)(3)(C) "provides the *only* acceptable means of . . . presenting additional facts." *Bay Area Business Council*, 423 F.3d at 634.  *See also Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643–44 (7th Cir. 2008) (upholding the district court's refusal to consider the additional facts put forth in response to the movant's statement of facts but not included in Local Rule 56.1(b)(3)(C) statement of additional facts).  Facts presented only in response to a defendant's statement of facts, but not in the plaintiff's own statement of additional facts are improper because the defendant has no mechanism to reply or otherwise dispute them. *Woods v. Von Maur, Inc.*, 837 F. Supp. 2d 857, 863 (N.D. Ill. 2011).  Therefore, any additional factual assertions contained within the above-mentioned paragraphs of Wilcox's response to Allstate's 56.1 statement will not be considered as facts "affirmatively demonstrating why summary judgment should be denied." *Id.*  However, these additional proffers are properly before the Court for the limited purpose of determining the

basis for Wilcox's denial of Allstate's factual assertions. *Id.* ("Using such evidence to directly dispute [the defendant's] facts is fine . . . .")

Wilcox's responses to several other factual assertions in Allstate's Rule 56.1 statement, specifically paragraphs 21, 22, 45, 47, 50, 69, 70, and 74, either do not directly address the substance of Allstate's factual allegation or fail to cite evidence from the record to support Wilcox's denial. While this Court draws all inferences in favor of the non-moving party, an adequate rebuttal of a supported assertion of fact requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero*, 246 F.3d at 933. Therefore, paragraphs 21, 22, 45, 50, 69, 70, and 74 of Allstate's Rule 56.1 statement are deemed admitted.

Allstate also asks the Court to strike certain paragraphs from Wilcox's Affidavit. In her Affidavit, Wilcox asserts that Allstate set her work hours, determined where her assignments would be, and cleared any personal days she decided to take. (Pl. 56.1 Resp. ¶¶ 8, 9, 11, 12.) Wilcox does not cite the record to support these facts, nor does she add an explanation in her Affidavit explaining the basis for these assertions. The Affidavit contains nothing more than a list of assertions that are unsupported by the record. "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Drake*, 134 F.3d at 887. Furthermore, unlike the declarations submitted by Howell and Medina, Wilcox's Affidavit was not submitted under penalty of perjury pursuant to 28 U.S.C. § 1746. While Wilcox receives the benefit of all facts that a reasonable jury might find, she cannot rely on mere conclusions and allegations to create factual issues. *Bladerston*, 328 F.3d at 320. Therefore, the assertions contained in Wilcox's Affidavit are not properly before the Court on summary judgment.

## II.      Wilcox's Title VII Claim

Employers are prohibited from retaliating against employees for complaining of discrimination or other practices that violate Title VII. 42 U.S.C. § 2000e-3(a); *Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720 (7th Cir. 2003); *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1007 (7th Cir. 2000). Third-party reprisals are not categorically excluded from operation of Title VII's antiretaliation provision, meaning the individual filing a Title VII claim for unlawful retaliation need not be the same individual who engaged in protected activity. *Thompson v. North American Stainless, LP*, 131 S. Ct. 863, 868 (2011) (finding that firing an employee in retaliation against the employee's fiancé who engaged in protected activity would, if proven, constitute unlawful retaliation under Title VII because a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired as a result). Therefore, Wilcox may bring a valid Title VII claim by alleging unlawful retaliation against her for complaints of discrimination filed by her husband.

### A.      Exhaustion of Administrative Remedies

Before a plaintiff can bring a Title VII claim to federal court, the plaintiff must exhaust all administrative remedies through the EEOC. *Tyson v. Gannett Co., Inc.*, 538 F.3d 781, 783 (7th Cir. 2008); *Sitar*, 344 F.3d at 726. Once those remedies are exhausted, a plaintiff may only bring claims that were included in her original EEOC charge. *Sitar*, 344 F.3d at 726; *McKenzie v. Ill. Dep't. Of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996) (citing *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). In this case, Wilcox alleges in her EEOC charge that Allstate violated the Age Discrimination in Employment Act ("ADEA"). Her Complaint, however, alleges a violation of Title VII of the Civil Rights Act. Allstate argues that

14

to the extent Wilcox asserts a claim under Title VII, her claim should be dismissed for failure to exhaust administrative remedies. The law does not support that position.

Courts have "adopted a liberal standard for reviewing the scope of an EEOC charge" *Farrell v. Butler Univ.*, 421 F.3d 609, 616 (7th Cir. 2005), and cautioned that "[w]hat boxes . . are checked on the EEOC form do not necessarily control the scope of a subsequent civil complaint."*Kristufek v. Hussman Foodservice Co*., 985 F.2d 364, 368 (7th Cir. 1993). Accordingly, "the judicial complaint in a Title VII case can embrace not only the allegations in the administrative charge but also 'discrimination like or reasonably related to the allegations of the charge and growing out of such allegations.' " *Malhotra v. Cotter & Co*, 885 F.2d 1305, 1312 (7th Cir. 1989) (quoting *Hemmige v. Chicago Public Schools*, 786 F.2d 280, 283 (7th Cir. 1986)), *superseded on other grounds by statute as stated in Rush v. McDonald's Corp.*, 966 F.2d 1104, 1119–20 (7th Cir. 1992). Claims in a complaint are reasonably related to allegations in a charge of discrimination when they are "so related and intertwined in time, people, and substance that to ignore the relationship for strict and technical application of the rule would subvert the liberal remedial purposes of the Act." *Sitar*, 344 F.3d at 727 (quoting *Kristufek*, 985 F.2d at 368). This approach prevents plaintiffs from "circumvent[ing] the EEOC's investigatory and conciliatory role and depriv[ing] the charged party of notice of the charge" *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534 (7th Cir. 1988) (quoting *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985)), but also recognizes that a majority of Title VII plaintiffs are laypersons who traditionally complete their EEOC charge without the assistance of a lawyer. *Taylor v. Western and Southern Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir. 1992).

The Court applies a two-part test to determine whether allegations made in a complaint are within the scope of the initial EEOC charge. *See Cheek*, 31 F.3d at 500; *Jenkins v. Blue*

*Cross Mut. Hosp. Ins.*, 538 F.2d 164, 167 (7th Cir. 1976). First, there must be a reasonable relationship between the allegations in the charge and the allegations in the complaint. *Id.* Second, the claims in the complaint must be reasonably expected to grow out of an EEOC investigation of the allegations in the charge. *Id.* "To be 'like or reasonably related,' the claim and the EEOC charge 'must, at a minimum, describe the same conduct and implicate the same individuals.' " *Moore v. Vital Prods.*, 641 F.3d 253, 257 (7th Cir. 2011) (quoting *Cheek*, 31 F.3d at 501). Courts place more importance on whether the "factual allegations in the body of the [EEOC] charge" are similar to those in the complaint, while less weight is accorded to whether the plaintiff checked the correct box in his EEOC charge. *Cheek*, 31 F.3d at 500. *Compare Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 527 (7th Cir. 2003) (finding that plaintiff's EEOC charges of discrimination based on national origin were not related to his complaint in federal court under the ADEA because "nothing about [plaintiff's] EEOC charge would have reasonably led one to conclude that [he] was a victim of age discrimination"), *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1100 (7th Cir. 1992) (determining that EEOC charge and complaint were not alike or reasonably related where employee complained to the EEOC of only certain episodes of race discrimination, and then sought judicial relief for different episodes of race discrimination), *and Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 984 (10th Cir. 1991) (finding that a charge filed with EEOC for discrimination related to a 1986 incident and 1988 termination did permit challenge to a 1979 nonpromotion), *with Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 168 (7th Cir. 1976) (finding that although charging party only checked box marked "race," factual allegations in charge also fairly raised questions of sex discrimination).

Although Wilcox's Complaint is based on a different legal theory (violation of Title VII) than her EEOC charge (violation of ADEA), both the charge and the Complaint allege unlawful retaliation. More importantly, Wilcox's complaint here in federal court is based on the same facts alleged in the EEOC charge. In her EEOC charge, Wilcox alleges the following: (1) beginning in September 2004 and through September 2008, her husband complained of harassment and discrimination while being employed with Allstate; (2) Wilcox was employed by Allstate as a contract employee through Pilot; (3) as a result of her husband's complaints of discrimination, Wilcox was retaliated against and terminated on two separate occasions – once in September 2008 and again in July 2009. The allegations in Wilcox's Complaint are nearly identical. In fact, the only difference between Wilcox's Complaint and her EEOC charge, aside from the Complaint providing additional details related to the facts in the charge, is that the Complaint lists Title VII as the basis for the claim rather than the ADEA. Therefore, this Court finds that the allegations in Wilcox's Complaint are sufficiently "related and intertwined in time, people, and substance" to the claims in her EEOC charge. The similarities between Wilcox's charge and Complaint also lead the Court to conclude that the allegations in Wilcox's Complaint could reasonably be expected to grow out of an EEOC investigation of the allegations in Wilcox's EEOC charge. The Court therefore finds that Wilcox has adequately exhausted her administrative remedies before filing her Complaint in federal court.

### B. Timeliness of Wilcox's Claim That Her Alleged Reassignment In 2008 Was Retaliatory

Claims of retaliation under Title VII and the ADEA must be brought within 300 days after an alleged unlawful employment practice. *See* 42 U.S.C. § 2000e–5(e)(1); 29 U.S.C. § 626(d)(1)(B). "Each discrete discriminatory act starts a new clock for filing charges alleging

that act," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), meaning each act must be brought to the EEOC's attention within 300 days of its occurrence. *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 460 (7th Cir. 2007). A time barred discriminatory act is not actionable, even if it is related to acts alleged in timely filed charges. *Morgan*, 536 U.S. at 113.

In this case, Wilcox filed her Charge of Discrimination with the EEOC on January 7, 2010. (Def. 56.1. St. ¶ 77.) Therefore, any discrete acts before March 13, 2009 cannot provide a cognizable basis for her retaliation claim. Because Wilcox's reassignment to Allstate's DOI Team took place in September 2008, it is time-barred.

Wilcox does not dispute that she filed her EEOC charge more than 300 days after the alleged retaliatory assignment. Instead, Wilcox maintains that her Title VII claim is not time-barred because her right to bring a Title VII claim for retaliation based on her husband's complaints was not acknowledged until January 24, 2011, when the Supreme Court decided in *Thompson v. North American Stainless, LP* that Title VII protects against third-party reprisals. 131 S.Ct. 863, 866 (2011). Wilcox argues that she could not have filed a valid charge before March 13, 2009 because before *Thompson* was decided in 2011, it was not clearly against the law for Allstate to retaliate against Wilcox for Mr. Wilcox's age discrimination complaints. According to Wilcox, barring claims arising from her reassignment in 2008 would forever foreclose her ability to recover for Allstate's violations even though the law has recently been altered to protect her rights.

The law does not support Wilcox's position. As a preliminary matter, the Court does not agree with Wilcox's premise – that it was not unlawful to retaliate against one's spouse for engaging in protected activity. In *Burlington N. And Sante Fe Ry. Co. v. White*, which predates Wilcox's 2008 assignment, the United States Supreme Court held that Title VII's antiretaliation

provision must be construed to cover a broad range of employer conduct, including any employer action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." 548 US. 53, 77 (2006). Though various Circuit Court decisions before *Burlington* held otherwise, *See, e.g., Fogleman v. Mercy Hospital, Inc.*, 283 F.3d 561, 564 (3d Cir. 2002); *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 819 (8th Cir. 1998), Wilcox points to no case in this circuit barring retaliation claims based on the alleged protected activity of a third party. The Court's own research suggests she would not have found one. *See EEOC v. V & J Foods, Inc.*, 507 F.3d 575, 581 (7th Cir. 2007) (collecting cases from other circuits on retaliation for third-party reprisals and adding "[t]his court has not expressed itself on the matter, and we need not do so in this case"). Wilcox's claim, therefore, would not have been novel, much less categorically barred, had she filed it within the 300-day window. In fact, the Supreme Court in *Thompson* specifically stated that "firing a close family will almost always meet the *Burlington* standard," reinforcing that it was not changing the law by broadening the scope of Title VII's antiretaliation provision.

Wilcox's argument fails even if we assume *Thompson* announced a new principle of law. When the Supreme Court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the Court's] announcement of the rule." *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 96 (1993). Therefore, the principle of law set forth in *Thompson*—that Title VII protects against third party reprisals—applies in this case despite the fact that the alleged retaliatory actions took place before Wilcox's 2008 reassignment and 2009 termination.

Wilcox, however, does not merely ask this Court to apply *Thompson* to events that predate that case, which this Court agrees is appropriate; she also asks we allow *Thompson* to retroactively toll the 300-day filing period with respect to her 2008 reassignment. The Court finds no support—and Wilcox cites none—for the proposition that subsequent changes in the law can retroactively toll an expired statutory filing period and revive an otherwise time-barred cause of action. *See e.g., Outler v. United States*, 485 F.3d 1273, 1281 (11th Cir. 2007) (change of law insufficient to establish an entitlement to equitable tolling). Therefore, the Court finds Wilcox's claim that her 2008 reassignment was retaliatory time barred.[4]

### C.    Employer-Employee Relationship

In order to bring a Title VII claim for unlawful retaliation, a plaintiff must establish the existence of an employer-employee relationship. *See EEOC v. N. Knox Sch. Corp.*, 154 F.3d 744, 746–47 (7th Cir. 1998) (finding that liability under the ADEA requires the existence of an employment relationship); *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991) (no liability under Title VII where plaintiff was not an employee of the defendant). "In determining whether a business relationship is one of employee-employer, courts look to the 'economic realities' of the relationship and the degree of control the employer exercises over the alleged employee." *Knight*, 950 F.2d at 380 (quoting *Unger v. Consolidated Food Corp.*, 657 F.2d 909, 915–16, n. 8 (7th Cir. 1981)). Specifically, courts consider: "(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether

---

[4] In any event, it is unlikely that Wilcox delayed filing her first EEOC charge based on a belief that the law had not yet firmly established a right against third-party reprisals. As Allstate points out, Wilcox's second EEOC charge was filed in January 2010, a full year before the Supreme Court decided *Thompson*, and claimed retaliation based on her association with her husband.

skills are obtained in the workplace, (3) responsibility for the cost of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefit; and (5) length of job commitment and/or expectations. *Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487, 492 (7th Cir. 1996); *Knight*, 950 F.2d at 378–379. Of these factors, the right to control the worker's actions is the most important. *See Knight*, 950 F.2d at 378.

Wilcox's Title VII claim against Allstate fails because she cannot establish that Allstate was her employer when her husband filed complaints with his supervisors or when she was terminated. First, and most importantly, Wilcox cannot establish that Allstate directed or controlled her during her temporary assignments to the CAT and DOI teams. After Wilcox was hired, Pilot unilaterally decided to assign her to Allstate. (Def. 56.1 St. ¶¶ 20–21.) Wilcox did not interview with Allstate prior to her assignment as a catastrophic litigation adjuster or to the DOI team. (*Id.* at ¶ 22.) During her assignment to Allstate, Wilcox reported to, was supervised by, and received feed back from Pilot managers. (*Id.* at ¶¶ 8, 26, 29.) If Wilcox had any work-related questions or needed time off from work during her assignment to Allstate, she went to her Pilot manager, not Allstate. (*Id.* at ¶¶ 28, 30.) Wilcox's reassignment to the DOI Team was directed by Jim Bergult, and her eventual termination in July 2009 Tomas Medina – both Pilot managers. These undisputed facts establish that Wilcox was a Pilot employee for the entirety of her assignments to the CAT and DOI Teams.

Nor do the facts suggest a joint employer relationship. A joint employer relationship may exist between a temporary services agency and its client only where the "two employers exert significant control over the same employees." *NLRA v. W. Temp. Servs., Inc.*, 821 F.2d 1258, 1266 (7th Cir. 1987). Here, only one employer—Pilot—exerted significant control over

Wilcox. As Pilot maintained that control over Wilcox for the duration of her assignment to Allstate, the Court finds no joint employer relationship.

The remaining factors also compel the conclusion that Allstate was not Wilcox's employer. With respect to the second factor, the kind of occupation and nature of skill required, Wilcox was hired by Pilot to perform litigation-adjusting services for Allstate – responsibilities with which she was already familiar since her former employment with Allstate from 1998-2003. (Def. 56.1 St. ¶¶ 16, 20.) The undisputed facts do not suggest that Wilcox acquired any new and specialized skills from Allstate while working for Pilot. *See e.g., Hojnacki v. Klein-Acosta*, 285 F.3d 544, 550 (7th Cir. 2002) (fact that plaintiff did not derive his job skills from his employment with defendant suggested no employment relationship). The fourth factor, how Wilcox received her pay and benefits, also weighs in favor of Allstate. It is undisputed that Wilcox submitted her timesheets and invoices to Pilot, received her paychecks from Pilot, had her taxes withheld by Pilot, and listed Pilot as her employer on her tax returns (Def. 56.1 St. ¶¶ 31–33, 35.); *See also Walters v. Metropolitan Educ. Enterprises, Inc.*, 519 U.S. 202, 207 (1997) (finding that under the "payroll method," which is favored by the EEOC in its administration of Title VII and the ADEA, the employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll); *Yonan v. U.S. Soccer Fed'n, Inc.*, No. 09-cv-4280, 2011 WL 2473385, at *6 (N.D. Ill. June 22, 2011) (no employment relationship based, in part, on the fact that defendant did not provide the plaintiff's paychecks and was not identified as an employer in the plaintiff's tax returns); *EEOC v. Catholic Knights Ins. Soc.*, 915 F. Supp. 25, 30 (N.D. Ill. 1996) (same) Wilcox also participated in a 401k plan through Pilot – a plan to which Allstate made no contributions. (Def. 56.1 St. ¶¶ 31–33, 35.) When Wilcox's employment was terminated, she received unemployment benefits from Pilot, not Allstate. (Def.

56.1 St. ¶¶ 31–33, 35.) Lastly, with respect to the fifth factor, the terms and nature of Wilcox's assignment to Allstate demonstrate that she was not an Allstate employee. Wilcox's assignment to Allstate was temporary and non-exclusive, and Wilcox understood that Pilot could move her to work for a different Pilot client at any time. (Def. 56.1 St. ¶¶ 23–24.); *See Yonan*, 2011 WL 2473385, at *7 (non-exclusive arrangements indicate no employment relationship).

The fact that Allstate provided Wilcox with office supplies, computers, and phone services does not change the outcome of the analysis. Where, as here, the remaining factors counsel against the finding of an employment relationship, a plaintiff cannot establish the requisite relationship simply because the defendant provides office space, equipment, access to phones, or other services that were extended to the employee to assist the conduct of business. *Catholic Knights*, 915 F. Supp. at 31 (finding no employment relationship even though defendant provided office space, equipment, access to phones, and secretarial services). Furthermore, a significant portion of the CAT Team's cost of operations fell on Pilot, which paid its employees a per diem rate to account for expenses they incurred while living away from home. (Def. 56.1 St. ¶ 32.); *See also Yonan*, 2011 WL 2473385, at *5 (finding no employment relationship where separate entity paid for travel-related expenses).

In addition, Pilot and Allstate entered a written agreement specifically clarifying that Allstate does not employ, influence, or otherwise control Pilot employees assigned to Allstate. Where a temporary services agency (Pilot) and its client (Allstate) have a written agreement clarifying that the client to whom the agency assigns individuals to work (Wilcox) does not employ, supervise, or otherwise control her, the temporary services agency's client does not have an employment relationship with the individual. *See Hojnacki v. Klein-Acosta*, 285 F.3d 544, 550 (7th Cir. 2002) (finding no employment relationship where contract between two

entities provided that the separate entity, not the defendant, "shall supervise all persons employed by it during the performance of their work . . . and they shall be employees of the [separate entity] and not employees of the [defendant]").

Because the undisputed facts demonstrate that Wilcox was employed by Pilot, not Allstate, during the relevant time period, Wilcox's Title VII claim against Allstate for retaliation fails.

### D.     Wilcox's *Prima Facie* Case for Retaliation

Even if Wilcox could establish she was an Allstate employee during the relevant time period, her Title VII claim would fail because she cannot establish a *prima facie* case for unlawful retaliation.

A plaintiff in a Title VII case may prove a claim of retaliation under either the direct method of proof or the indirect method. *See Weber v. Universities Research Ass'n*, 621 F.3d 589, 592 (7th Cir. 2010); *Rhodes v. Illinois Dep't. of Transp.*, 359 F.3d 498, 508 (7th Cir. 2004). Under the direct method, a plaintiff must show direct or circumstantial evidence of "(1) a statutorily protected activity; (2) an adverse employment action taken by the employer; and (3) a causal connection between the two." *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007); *Davis v. Con-Way Transp. Central Express. Inc.*, 368 F.3d 776, 786 (7th Cir. 2004). Therefore, in this case, Wilcox must show that Allstate's decision to terminate her was in retaliation for her husband's complaints to his supervisors and that those complaints constitute "protected activity." "Direct evidence is defined the same for discrimination and retaliation claims–that is, it can be an admission of intentional discrimination or a 'mosaic' of circumstantial evidence that directly points to a discriminatory intent." *Davis*, 368 F.3d at 786. Circumstantial evidence in this context generally comes in two forms: "(1) ambiguous

statements or behavior toward other employees in the protected group that taken together allow an inference of discriminatory intent, and (2) evidence of systematically better treatment of employees outside the protected class." *Montgomery*, 626 F.3d at 393 (7th Cir. 2010).

In order to prove retaliation under the indirect method, Wilcox must show: (1) a statutorily protected activity, (2) satisfactory job performance, (3) an adverse employment action despite satisfactory job performance, and (4) similarly situated employees who did not engage in the statutorily protected activity and were treated more favorably. *Burks v. Wisconsin Dept. Of Transp.*, 464 F.3d 744, 759 (7th Cir. 2006); *Rhodes*, 359 F.3d at 508. If Wilcox proves these elements, the burden of production shifts to Allstate to produce a "legitimate, non-invidious reason for its adverse action." *Rhodes*, 359 F.3d at 508; *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). If Allstate does so, the burden of production shifts back to Wilcox to show that Allstate's stated reasons are pretextual. *Rhodes* at 508; *Hilt-Dyson* at 465. If Wilcox cannot show pretext, Allstate is entitled to summary judgment. *Stone v. City of Indianapolis Pub. Utils Div.*, 281 F.3d 640, 644 (7th Cir. 2002).

Both the direct and indirect methods of proof require that the plaintiff establish the existence of protected activity. *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008). Since Wilcox cannot show that her husband's 2004 and 2008 complaints to his supervisors constituted protected activity, she cannot make out a *prima facie* case for unlawful retaliation under either method. Furthermore, under the direct method of proof,[5] Wilcox's Title VII claim

---

[5]Though Wilcox does not explicitly state whether she wishes to proceed under the direct or indirect method in her brief. However, Wilcox argues at length that there is a causal connection between her husband's 2008 complaint and her reassignment and release, but does not allege that similarly situated employees unaffiliated with her husband were treated better. As the causal-connection element applies only to the direct method of proof, while the similarly-situated element applies only to the indirect method, the Court assumes Wilcox is proceeding under the direct method.

also fails because she has not established a causal connection between her husband's complaints and her termination.

### 1.    Protected Activity

In order for a complaint filed with an employer to constitute statutorily protected activity under Title VII, the complaint must indicate that the discrimination occurred based on sex, race, national origin, or some other protected class. *Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, 563 (7th Cir. 2007) ("To constitute protected expression, the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class."); *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1147 (7th Cir. 1997). Title VII gives plaintiffs flexibility with respect to the format of the complaint; statutorily protected activity can range from filing formal charges to voicing informal complaints to superiors. *Benitez v. Am. Standard Circuits, Inc.*, 678 F. Supp. 2d 745, 762 (N.D. Ill. 2010). However, merely complaining in general terms of discrimination, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient. *See e.g., Miller v. Am. Family Mut Ins.*, 203 F.3d 997, 1008 (7th Cir. 2000) (no protected activity where complaints concerned a general displeasure with certain management practices but not discrimination related to a protected class). Therefore, in order to establish protected activity in this case, Wilcox would have to show that her husband's 2004 or 2008 complaints to Allstate management put Allstate "on notice" of potential age-based treatment. *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 392 (7th Cir. 2010) (noting that plaintiff's complaints of "general unfairness" in assignments "were too vague to put the employer on notice" of race-based treatment) While there are no "magic words" Mr. Wilcox need use in order for his complaints to constitute protected activity, the complaints must "say something to make clear to [Allstate] that [Mr.

Wilcox's age] was an issue." *Swinney v. Illinois State Police*, 332 Fed. Appx. 316, 318 (7th Cir. 2009) (noting that plaintiff in a sexual harassment case need not use the words "sex" or "gender discrimination" in complaints filed with her employer, but ultimately holding that the complaints did not constitute protected activity because they did not make clear that the plaintiff was being mistreated because of sex or gender). *See e.g, Hubbard v. Blue Cross Blue Shield Ass'n*, 1 F. Supp. 2d 867, 881 (N.D. Ill. 1998) (plaintiff's complaint constituted protected activity even though it did not specifically reference sex discrimination because the complaint asked "why the women los[t] their office[s] and the men didn't").

Wilcox has failed to demonstrate how either of Mr. Wilcox's complaints put Allstate on notice of possibility of age discrimination. Wilcox's 2004 e-mail to then-supervisor Melvin Springer, titled "Request for Equal Treatment," does not allege discriminatory treatment based on age. In that e-mail, Mr. Wilcox complains that Coley, the employee selected to lead the ESPO, would do so with a bonus-eligible job title while Mr. Wilcox's title had been changed to a non-bonus eligible position. (Def. 56.1 St. ¶ 42; Pl. Resp., Ex. C.) The e-mail concludes with a request for equal treatment. (Pl. Resp., Ex. C.) Mr. Wilcox does not suggest, much less state explicitly, that he felt he was changed to a non-bonus eligible position because of his age. (Def. 56.1 St. ¶¶ 42, 43; Pl. Resp., Ex. C.). Complaints concerning a general displeasure with being paid less than co-workers despite seniority does not denote a protected activity or discrimination related to a protected class. *Miller*, 203 F.3d at 1008. *See also Montgomery*, 626 F.3d at 392 ("Employers need not divine complaints from ether, guessing at the subjective suspicions of employees."). The fact that Mr. Wilcox's complaint alleges unequal treatment and points to another individual who was treated differently does not, by itself, bring his complaint within the ambit of protected activity. *Schulz v. Varian Med. Sys.*, 315 F. Supp. 2d 923, 937 (N.D. Ill. 2004)

(complaint that plaintiff "was being subjected to different standards than his colleagues" considered "too generic to rise to the level of statutorily protected activity").

Similarly, Mr. Wilcox's 2008 complaint to Coley is a general complaint about Coley's management that indicates no connection to a protected class. While the e-mail alleges a "hostile and unacceptable work environment" (Pl. Resp., Ex D.), nothing in his complaint suggests this treatment was based on Mr. Wilcox's age, or any other protected characteristic for that matter. This does not constitute protected activity. *Tomanovich v. City of* Ind., 457 F.3d 656, 663 (7th Cir. 2006) ("Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient."). *See also Swinny*, 332 Fed. Appx. at 318 ("An employee does not engage in protected activity merely by complaining of being 'picked on' unless that complaint makes clear that he or she is being mistreated because of sex or gender.") (citing *Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003)).

Wilcox nevertheless maintains that Title VII does not require her to show that Mr. Wilcox's underlying complaints were provable in order to constitute protected activity. This argument misses the point. Mr. Wilcox's complaints to Springer and Coley fail to constitute protected activity not because there is doubt as to whether Mr. Wilcox could have proven a Title VII violation for age discrimination, but because Mr. Wilcox's complaints were insufficient to put Allstate on notice that he was complaining of age discrimination at all. Indeed, the very case upon which Wilcox relies, *Magyar v. St. Joseph Regional Med. Ctr.*, 544 F.3d 766 (7th Cir. 2008), involved a plaintiff who filed a complaint with her employer *explicitly* based on sexual harassment by a co-worker. *Id.* at 768. The court held that it was not necessary for the plaintiff to "prove that the underlying conduct she perceived as sexual harassment actually was serious

28

enough to constitute a Title VII violation." *Id.* at 771. *Magyar* did not confront, let alone overturn, well-settled law in this Circuit by holding that employees are excused from putting their employers on notice of treatment based on a protected class. *See Montgomery*, 626 F.3d at 392; *Kodl*, 490 F.3d at 563; *Tomanovich*, 457 F.3d at 663; *Miller*, 203 F.3d at 1008–09; *Gleason*, 118 F.3d at 1147. Furthermore, there was no dispute in *Magyar* that the basis for the plaintiff's complaint was sexual harassment.

Here, the basis for Mr. Wilcox's complaints is unclear. Allstate was aware that Mr. Wilcox felt he was being treated unequally, but had no reason to assume that he believed the unequal treatment stemmed from his age. Therefore, notwithstanding whether Mr. Wilcox could have proven a violation of the ADEA, the 2004 and 2008 complaints were insufficient to put Allstate on notice that Mr. Wilcox alleged discrimination based on his age.

Wilcox's contention that her husband told her he was being discriminated against because of his age does not change the analysis. First, Mr. Wilcox's statements to his wife are inadmissible hearsay and therefore not properly before the court on summary judgment. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment."). *See also Logan v. Caterpillar, Inc.*, 246 F.3d 912, 925 (7th Cir. 2001) (inadmissible hearsay not enough to preclude summary judgment); *Esenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) (hearsay is inadmissible in summary judgment proceedings to the same extent it is inadmissible at trial). Second, even if they were admissible, Mr. Wilcox's statements to his wife would not constitute protected speech. "An employee can honestly believe [he] is the object of discrimination, but if [he] never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints." *Sitar*, 344 F.3d at 727 (quoting *Miller*, 203 F.3d at 1008).

Therefore, even if Mr. Wilcox's reflections about his treatment at Allstate were before the Court—which they are not—they would not establish protected activity for the purposes of Wilcox's *prima facie* case.

Because Mr. Wilcox's complaints to Allstate did not indicate or suggest a grievance based his membership to a protected class, they do not constitute protected activity. Accordingly, Wilcox cannot make out her *prima facie* case for unlawful retaliation under Title VII.

### 2. Causal Connection Between Protected Activity and Adverse Employment Action

Even if Wilcox could establish she was an Allstate employee at the time of her termination and show that her husband engaged in protected activity, her Title VII claim for retaliation would fail under the direct method of proof because she cannot prove a causal connection between Mr. Wilcox's complaints and adverse employment action against her. In order to establish a causal connection, Wilcox must show that Allstate took or influenced an adverse employment actions against her for a retaliatory reason. *Long v. Teachers' Retirement System of Illinois.*, 585 F.3d 344, 351 (7th Cir. 2009). Based on the undisputed facts, Wilcox cannot prove such a claim.

First, Wilcox cannot prove Allstate made or influenced Pilot's decision to terminate her employment. Based on reduction in pending claims, Allstate, as Pilot's client, informed Pilot of how many temporary service employees it required moving forward. After being made aware of Allstate's requirements, Pilot manager Tomas Medina unilaterally decided to satisfy those requirements by terminating Wilcox from her employment. Wilcox points to no discussions between Medina and Allstate indicating that Allstate drove the decision to terminate her

specifically. Therefore, while Allstate initiated the process that ultimately led to Pilot's decision to terminate one of its employees, Wilcox has not established that Allstate micro-managed Pilot to the extent of directing or influencing which Pilot employee would be let go.

Moreover, Wilcox presents no evidence linking Mr. Wilcox's 2004 e-mail and her 2009 termination. Not only is the temporal connection between the two events weak, both events involve completely different Allstate personnel. Wilcox filed his 2004 complaint with his then-supervisor, Melvin Springer. The complaint referenced, though not by name, recently-promoted Market Claims Manager Terri Coley. With respect to Wilcox's termination, on the other hand, only Penny Howell was involved insofar as she advised Medina of the number of positions Allstate needed Pilot to fill with temporary employees. Wilcox offers no evidence suggesting Springer or Coley had any involvement in Wilcox's removal from her assignment in 2009.

Similarly, Wilcox has not shown a causal connection between Mr. Wilcox's September 2008 complaint and her termination in July 2009. Though the temporal connection here is better, "suspicious timing alone . . . does not support a reasonable inference of retaliation." *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) ("[T]he mere fact that one event preceded another does nothing to prove that the first event caused the second. Rather, other circumstances must also be present which reasonably suggest that the two events are somehow related to one another."). Wilcox presents no facts supporting her claim that upper-level Allstate management and Jim Osborne, a high-level Vice President at Allstate, decided to end her employment with Pilot. In fact, Wilcox has not shown that Osborne was even aware that Mr. Wilcox filed a complaint in 2008. *See Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657 (7th Cir. 2012) (finding that a plaintiffs inability to show that the individuals who discharged her were aware of her protected activity

"dooms [her retaliation] claim not only under the direct method, but also under the indirect method") (internal quotations omitted).

Here again, Wilcox relies on inadmissible hearsay in an effort to establish that upper-level management wanted her removed. Specifically, Wilcox asserts that she was told by Howell that Allstate management did not want Wilcox working for Allstate anymore. Wilcox maintains that Howell's statements are admissible because they fall within Federal Rule of Evidence 801(d)(2) based on Howell's position as a manager at Allstate and the fact that the statements were made against Allstate's interests.[6] In order for Howell's statement to constitute an admission, Howell need not have been personally involved in Wilcox's termination, "but her duties must encompass some responsibility related to the decisionmaking process affecting the employment action." *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011) (citing *Stephens v. Erickson*, 569 F.3d 779, 793 (7th Cir. 2009)).

Wilcox has not shown that Howell was involved in the decision to end her assignment at Allstate. The undisputed facts demonstrate that Howell provided Medina with the number of positions Allstate needed Pilot to fill. The Court does not find this to be a personnel-related communication, but rather a client communicating in general terms with its service provider regarding the client's needs going forward. The separate process of specifically selecting Wilcox for removal involved Pilot managers only. Accordingly, Rule 801(d)(2) does not apply. In any case, even if Howell's statements were admissible, Wilcox has not established that the

---

[6] Federal Rule of Evidence 801(d)(2) provides that a statement is not hearsay if "[t]he statement is offered against an opposing party and: (A) was made by the party in an individual or representative capacity; (B) is one of the party manifested that it adopted or believed to be true; (C) was made by a person whom the party authorized to make a statement on that subject; (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or (E) was made by the party's coconspirator during and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2).

individuals in Allstate's upper management who allegedly wanted to end her assignment were also aware of Mr. Wilcox's 2008 complaint and acted with a retaliatory animus. Without that connection, Wilcox's effort to establish a *prima facie* case fails.

The Court finds Wilcox's assertion that Allstate influenced the decision to terminate her purely speculative. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (a retaliation claim cannot survive summary judgment where it is based on a plaintiff's "flights of fancy, speculations, hunches, intuitions, or rumors"). Because Wilcox cannot show that her husband engaged in protected activity or establish a causal connection between that activity and adverse employment actions against her, she cannot make out a *prima facie* case for unlawful retaliation under Title VII.

In light of these two independent grounds for granting Allstate's motion for summary judgment, the Court need not address whether Wilcox has proven that Allstate's stated reasons for terminating her were pretextual.

## CONCLUSION AND ORDER

For the foregoing reasons, Allstate's motion for summary judgment is granted.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: December 17, 2012